## UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

FILED
JAN 2 0 2012
DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

United States of America )
v. )
NEVINE ALY ELSHIEKH ) Case No. 7:12-MJ-1009
)
)
_____ )
*Defendant*

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of _____ in the county of __New Hanover__ in the __Eastern__ District of __North Carolina__, the defendant violated __18__ U. S. C. § __1958(a)__, an offense described as follows:

From in or about December 21, 2011 and continuing up to and including Janaury 20, 2012, in the Eastern District of North Carolina, the defendant, NEVINE ALY ELSHIEKH, did knowingly and intentionally conspire, confederate, agree and have a tacit understanding with others known and unknown to use or cause another to use the mail or any facility of interstate or foreign commerce, with the intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value.

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

**REDACTED VERSION**
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

_____
*Complainant's signature*
JAMES LANGTRY Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 01/20/2012

_____
*Judge's signature*

City and state: Wilmington North Carolina

ROBERT B. JONES JR. US Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NORTH CAROLINA

AFFIDAVIT IN SUPPORT OF ARREST WARRANTS

James Langtry, being duly sworn, deposes and says he is a Special Agent with the Federal Bureau of Investigation (FBI) duly appointed according to law and acting as such.

1. I have been a Special Agent with the FBI for over 24 years and am currently assigned to the Charlotte Division. During the course of my career, I have served in three FBI Field Divisions, including the Charlotte Division, and have conducted or assisted with criminal investigations in almost all of the FBI's investigative programs to include the Violent Crimes program. Since my arrival in the Charlotte Division on March 1, 2010, I have been assigned to the Joint Terrorism Task Force (JTTF) located in Wilmington, North Carolina.

2. I have directly participated in an investigation into allegations that HYSEN SHERIFI, NEVINE A. ELSHIEKH and SHKUMBIN SHERIFI are planning a murder-for-hire scheme in violation of Title 18, USC, Section 1958. The intended targets of the scheme are witnesses who testified against SHERIFI at his federal trial, and a federal inmate who he believes defrauded SHERIFI out of money. I am thoroughly familiar with the information contained in this affidavit. The statements contained in this affidavit are based in part on information provided by cooperating witnesses, information provided by other special agents of the FBI, information provided by special agents of the Bureau of Alcohol Tobacco and Firearms (BATF), information provided by investigators from the New Hanover County Sheriff's Office (NHCSO) and my experience and background as a Special Agent of the FBI. Since this affidavit is for the limited purpose of obtaining warrant to authorize the arrest of NEVINE A. ELSHIEKH, I have not included each and every fact known to me concerning this investigation.

3. The facts and circumstances in this investigation as set forth below demonstrates that there is probable cause to believe that the defendant NEVINE A. ELSHIEKH has entered into a murder for hire conspiracy to have individuals killed in violation of Title 18, United States Code (USC) Section 1958.

4. As background, on or about October 13, 2011, HYSEN SHERIFI was convicted by a jury in federal court for violation of Title 18, United States Code (USC) Section 2339(a) (Providing Material Support to Terrorists), Title 18, USC, Section 956 (Conspiracy to Murder, Kidnap and Injure Persons Abroad), Title 18, USC, Section 1117 (Conspiracy to Murder United States Military Personnel) and Title 18, USC, Section 924(c) (Possession of a Firearm in Furtherance of a Crime of Violence). The conviction was a result of a six year Counterterrorism Investigation conducted by the Raleigh office of the FBI into a group of individuals suspected of promoting radical Islamic ideology and promoting and conducting violence here and abroad. In particular, the group conducted paramilitary training and conspired to attack United States military service members and their families at the Marine Corp Base located at Quantico, Virginia. As a result of his conviction, SHERIFI is currently incarcerated as a federal inmate in the New Hanover County Detention Facility (NHCDF) located at 3950 Juvenile Center Drive, Castle Hayne, North Carolina. SHERIFI arrived at NHCDF on or about October 13, 2011.

## Confidential Source One

5. In the course of this investigation, an individual was developed as a confidential source hereinafter referred to as confidential source one (CS-1). CS-1 has provided information to law enforcement in the past which has resulted in the arrest of three individuals and the seizure of a firearm and a quantity of controlled substances. Investigators from both the BATF and the NHCSO who worked with CS-1 advised they found his/her information to be credible and reliable. CS-1 provided information to your Affiant which is contained in this affidavit which has been

corroborated through independent law enforcement investigation. CS-1 has previously provided information to the affiant which resulted in the issuance of a search warrant on December 13, 2011 in the Eastern District of North Carolina. The search warrant authorized the opening of a sealed letter. The letter was provided to CS-1 by SHERIFI for the purpose of smuggling it out of the jail. Assertions made by SHERIFI to CS-1 were used to help establish probable cause to open the letter. Upon opening the letter, nothing of a criminal nature was discovered by law enforcement and SHERIFI's statements, as told to CS-1, were found to be inaccurate. Since the contents of the letter contained no evidence of a crime, the letter was resealed and sent on its way. It is the affiant's belief that the smuggling of the letter out of the jail by CS-1 at the request of SHERIFI was a test to determine if CS-1 was reliable and/or working at the direction of law enforcement.

6. In November, 2011 CS-1 contacted the FBI to advise that HYSEN SHERIFI had confided in him and requested his/her assistance for the purpose of hiring someone to kill several individuals. Three of the intended victims are witnesses who testified against him at his federal trial. Another intended victim is an inmate who he believes defrauded SHERIFI out of money concerning his federal charges. Of the intended victims, two reside outside the state of North Carolina. During the course of this investigation, SHERIFI has informed CS-1 that he believes that at least one of the witnesses resides outside of North Carolina.

7. Based on this investigation, your affiant is aware SHERIFI believes that two of the targets reside outside the state of North Carolina.

8. In an effort to obtain further information from SHERIFI, CS-1 agreed to assist him and identified an associate who would be willing to kill these individuals for payment. CS-1 has done this with the knowledge of your affiant.

9. During the course of this investigation, CS-1 has advised that SHERIFI has promised to pay a sum of money for the

murder and beheading of individuals who testified against SHERIFI at his federal trial.

10. Your affiant has reviewed recordings in which SHERIFI further told CS-1, during conversations at the NHDCF, he wants photographs taken, and provided too him, of the dead bodies and severed heads. He further told CS-1 that he wants the heads and bodies disposed of. SHERIFI, in sum and substance, explained he wants the witnesses to completely disappear so they cannot testify against him, and others, at any future trials. SHERIFI, in sum and substance, also told CS-1 he may use the photographs of the dead bodies and severed heads to convince other potential witnesses not to testify against him, or his co-conspirators, at future proceedings.

11. On December 21, 2011, NEVINE ALY ELSHIEKH (herein after referred to as ELISHIEKH) visited HYSEN SHERIFI at the NHCDF. The audio of that visit was monitored and recorded by the affiant. During the course of this visit, SHERIFI asked ELSHIEKH to write down some information to pass on to another individual. SHERIFI did not verbally tell ELSHIEKH the information but passed it to her visibly in the form of written notes. Upon writing down the information obtained from SHERIFI, ELSHEIKH was overheard repeating a specific address identified as being related to one of the individuals who testified at SHERIFI's federal trial.

12. Detective Jason Smith, NHCSO has advised your affiant that all individuals visiting inmates at the NHCDF must check in at the front desk and produce identification. In doing so, a log is maintained at the NHCDF documenting all inmate visits. A review of this log determined that on December 21, 2011, NEVINE ALY ELSHIEKH checked in at the NHCDF on or about 2:37 pm for a scheduled 3:00 pm visit with inmate HYSEN SHERIFI.

## Confidential Source Two

13. During the course of this investigation, another individual was developed as a confidential source hereinafter referred to as confidential source two (CS-2). CS-2 provided information to your Affiant which is contained in this

affidavit which has been corroborated through independent law enforcement investigation.

14. On December 21, 2011, at approximately 3:52 pm, CS-2 received a voice mail message. Upon review of his/her cellular telephone, CS-2 determined that the call leaving the voice mail message originated from ▓▓▓▓▓. Based upon review of recorded jail conversations between SHERIFI and ▓▓▓▓ ▓▓▓ and also through non-legal correspondence between SHERIFI and ELSHIEKH, this numbers has been identified as being used by ELSHIEKH. Information obtained during the course of this investigation has determined this to be a cellular telephone. CS-2 retrieved the voice mail message and determined it was from a female identifying herself as "HYSEN SHERIFI's friend." In the message, the female states she has information that SHERIFI wanted to provide to CS-2. Your affiant through the course of this investigation has become familiar with ELSHIEKH's voice and can identify the voice of the caller as ELSHIEKH.

15. On December 21, 2011 at approximately 3:56 pm, CS-2 placed a return telephone call to ▓▓▓▓▓. A female answered identifying herself as SHERIFI's friend. The female told CS-2 she had three addresses that SHERIFI wanted her to give to CS-2 which she did. Based on the names and addresses provided by ELSHIEKH, your affiant knows these to be the names and addresses associated with the intended victims, two of which were witnesses at SHERIFI's federal trial. One of the addresses provided was outside the state of North Carolina.

16. A review of non-legal mail for HYSEN SHERIFI at the NHCDF found a letter postmarked December 27, 2011 addressed to HYSEN SHERIFI with the return address, "NEVINE, ▓▓▓▓▓ ▓▓▓▓▓▓▓▓" The contents of the envelope included a photocopy of a Twitter page in the name identical to one of the witnesses.

17. During the period of December 30, 2011 to January 1, 2012, CS-1 told SHERIFI that an associate had conducted surveillance of one of the intended victims during which time, he took photographs. CS-1 agreed to pass a photograph to SHERIFI through CS-2 to confirm the identity of the intended target. SHERIFI agreed to have someone pick up the photograph from CS-2.

18. On January 2, 2012, your affiant provided a photograph of one of the intended victims to CS-2. This photograph was taken by agents of the FBI several days earlier. CS-2 provided this photograph to ELSHIEKH pursuant to the instructions of SHERIFI.

19. Law enforcement surveillance has established that ELSHIEKH uses a 2004 silver Volvo XC90, bearing North Carolina license number ▮▮▮▮▮▮ to drive from Raleigh, North Carolina to Castle Hayne, North Carolina to visit with SHERIFI. On January 2, 2012, ELSHIEKH was observed using the 2004 Volvo XC90 when she met with CS-2 to obtain the photograph.

20. On January 2, 2012, previous to meeting with CS-2, ELSHIEKH was observed meeting with a male in Raleigh, North Carolina identified as SHKUMBIN SHERIFI (your affiant known this person to be the brother of HYSEN SHERIFI). After a brief meeting with SHKUMBIN SHERIFI, ELSHIEKH departed and headed eastbound on Interstate 40.

21. On January 2, 2012 at approximately 12:21 pm, ELSHIEKH met with CS-2 in Wilmington. At this time, CS-2 provided ELSHIEKH with the photograph of the intended victim which was provided to him/her by your affiant. The meeting was arranged through telephonic contact with ELSHIEKH who called using cellular telephone ▮▮▮▮▮▮▮▮. Upon giving the photograph to ELSHIEKH, CS-2 stated "I got the picture from Treetop and Treetop wants to make sure it's the right person to be killed." ELSHIEKH responded "Okay, Treetop." CS-2 further told ELSHIEKH, "Treetop needs to make sure it's the right person." ELSHIEKH responded, "Okay." This entire meeting was observed and documented by your affiant. Your affiant is aware that CS-1 provided HYSEN SHERIFI with the name of "Treetop" or "Tree" as the person who would be performing the "hits" on the intended victims.

22. During their meeting, CS-2 also asked ELSHIEKH if she had money for "Treetop." ELSHIEKH replied she had some but not all of it. She told CS-2 she was not sure whether SHERIFI wanted her to give CS-2 the money at this time. ELSHIEKH

stated she was going to meet SHERIFI at 1:00 pm and would find out then.

23. Shortly after meeting with CS-2, ELSHIEKH met SHERIFI at the NHCDF. This meeting was recorded by your affiant. During the visit, SHERIFI asked ELSHIEKH if she met CS-2 and whether she got "them." ELSHIEKH acknowledged that she had but there was only one. Based upon the nature of this investigation, your affiant believes that this conversation refers to the photograph of the intended victim. SHERIFI requested to see it. SHERIFI continued to ask questions which ELSHIEKH refused to answer verbally. ELSHIEKH then began writing notes to SHERIFI which she asked him if he could read.

24. Later during the visit, SHERIFI tells ELSHIEKH to "give her that from my brother." ELSHIEKH replied "Well, she asked for it now I said I don't have permission." SHERIFI then instructed ELSHIEKH to go back and give it to CS-2. He also instructed her to tell CS-2 "yes."

25. A review of the inmate log at the NHCDF determined that on January 2, 2012, NEVINE ALY ELSHIEKH checked in at 12:49 pm for a scheduled 1:00 pm visit with inmate HYSEN SHERIFI.

26. On January 2, 2012 at approximately 2:31 pm, CS-2 met again with ELSHIEKH in the same vehicle she was operating previously. CS-2 asked ELSHIEKH if SHERIFI confirmed that it was the right person. ELSHIEKH responded "yeah" but then indicated she did not want to speak. ELSHIEKH then wrote a note in CS-2's presence which read, "Pic Confirmed." On the other side of the paper ELSHIEKH wrote, "His brother is coming Saturday with rest." ELSHIEKH also gave CS-2 an envelope containing $750.00 in United States currency. CS-2 counted the money in ELSHIEKH's presence. Upon departing, ELSHIEKH identified herself to CS-2 as "Nevine."

27. On January 8, 2012, SHKUMBIN SHERIFI was observed travelling eastbound on Interstate 40 driving a 1997 Honda Odyssey. He arrived at the NHCDF at approximately 12:42 pm for a scheduled 1:00 pm visit with his brother, HYSEN SHERIFI. The visit was monitored and recorded by agents of the FBI. The two conversed during the visit almost entirely in a foreign

dialect. SHKUMBIN SHERIFI departed the NHCDF at approximately 2:28 pm.

28. A review of the inmate log at the NHCDF determined that on January 8, 2012, SHKUMBIN SHERIFI checked in at 12:45 pm for a scheduled 1:00 pm visit with inmate HYSEN SHERIFI.

29. At approximately 2:16 pm CS-2 received a telephone call from telephone number ▮▮▮▮▮▮▮▮. The caller identified herself as the sister of SHKUMBIN SHERIFI. The caller said SHKUMBIN SHERIFI wanted to meet CS-2 and needed directions. The caller instructed CS-2 to send a text message with the directions to cellular telephone ▮▮▮▮▮▮▮▮. Soon after, the same caller sent a text message to CS-2 which stated that her brother's cellular telephone was not working. She asked CS-2 to text her the address of her location. The caller stated she would then pass it along to SHKUMBIN SHERIFI through his FACEBOOK account.

30. On January 8, 2012 at approximately 2:42 pm, CS-2 met with SHKUMBIN SHERIFI in Castle Hayne, North Carolina. During the course of the meeting, SHKUMBIN SHERIFI gave CS-2 $4,250.00 in United States currency. He acknowledged to CS-2 he was aware of the fact that NEVINE already gave the CS-2 $750.00 bringing the total to $5,000.00. After counting the money, CS-2 confirmed to SHKUMBIN SHERIFI that the total amount was $5,000.00. Based on this dollar amount, CS-2 then told SHERIFI, "So you know that's only for one person. So you need to ask Sherifi which one he want killed. The black guy or Arab." SHKUMBIN SHERIFI replied, "Okay, um does he, um, are you guys in touch?" He later claimed not to know what was going on but promised to speak with his brother and get a response to CS-2's question later on.

31. Wherefore your deponent respectfully requests that arrest warrants be issued for the defendants NEVINE ALY ELSHIEKH for violation of Title 18, USC, Section 1958 so that they may be dealt with according to law.

_____
JAMES LANGTRY
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence.

_____ 1/20/2012
                        Date

Robert B. Jones, Jr.
US Magistrate Judge